# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARROD JOSEPH MILLER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>GHILARDUCCI, et al.,<br><br>　　　　　Defendants. | Case No. 1:17-cv-00448-SKO (PC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(Doc. 9)**<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

## **INTRODUCTION**

### A.　**Background**

Plaintiff, Jarrod Joseph Miller, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. As discussed below, Plaintiff fails to state a cognizable claim upon which relief may be granted and the Complaint is **DISMISSED** with leave to file a first amended complaint.

### B.　**Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or

1

appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.    Pleading Requirements**

**1.    Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

If he chooses to file a first amended complaint, Plaintiff should make it as concise as possible in **no more than twenty-five (25) pages**. Plaintiff should state which of his constitutional rights he believes were violated by each Defendant and the facts that support each contention. Plaintiff need not and should not cite legal authority for his claims in a first amended complaint. If Plaintiff files a first amended complaint, his factual allegations will be screened under the legal standards and authorities set forth in this order.

### 2. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff names, but fails to link, Warden Stu Sherman, the Director and Deputy Director, and the California Secretary of State to any of his factual allegations.[1] Plaintiff must clearly identify which Defendant(s) he believes are responsible for each violation of his constitutional rights and the supporting factual basis, as his Complaint must place each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

---

[1] As discussed below, merely stating that people in these positions are responsible for policies and what goes on in a prison does not suffice.

3

# DISCUSSION

### A. Plaintiff's Allegations

Plaintiff is currently incarcerated at the R.J. Donovan Correctional Facility ("RJD") in San Diego, California; however, his allegations are based on circumstances that allegedly occurred at the Substance Abuse Treatment Facility ("SATF"), in Corcoran, California. Plaintiff names the following prison staff as Defendants: Sergeant Jeffrey Ghilarducci; Warden Stu Sherman; the current Director and Deputy Director of the California Department of Corrections and Rehabilitation ("CDCR"); the current California Secretary of State; Wardens from 2012 to 2015 at High Desert State Prison ("HDSP"); Director or Deputy Director of the CDCR from 2012 to 2015; and California Secretary of State from 2012 to 2015.

Plaintiff alleges that the "random" frisk policy used during chow time at SATF is unconstitutional and that Sgt. Ghilarducci violated his rights by searching him on December 20, 2016 and December 21, 2016. Plaintiff alleges that as he was leaving the chow hall on December 20, 2016, Sgt. Ghilarducci said "come here." Plaintiff walked over to Sgt. Ghilarducci and asked "why?" Sgt. Ghilarducci told Plaintiff not to ask why, and immediately "started putting his hands all over" Plaintiff's body. A second officer closed the door to the chow hall while a third officer approached Plaintiff and began yelling and cussing at him. Plaintiff alleges he was told they were conducting random searches, they intended to search him again the next day, and told him that he had "better not say a word about it." The next morning, three officers surrounded Plaintiff and one frisked him while Sgt. Ghilarducci watched from approximately ten feet away.

Plaintiff alleges that the second search was not random since Plaintiff was told it was going to happen. Plaintiff alleges that since his incarceration in 2012, he has been continuously subjected to a "suspicionless" random search policy during and after chow time. Plaintiff alleges that harmless food is labeled contraband and inmates are frisked after leaving the chow hall for any food that an inmate may want to take back to his cell -- despite the fact that inmates are allowed to have food in their cells. Plaintiff alleges that such frisking is not required as inmates are under constant observation while eating in the chow hall. Plaintiff alleges that these searches are conducted to allow officers to randomly touch people during and after meal time. Plaintiff

4

feels as though he has been molested by the frisks. Plaintiff states he is not incarcerated because of "anything related to contraband" and he has never been found to have contraband. Plaintiff contends that indigent inmates who must eat in the chow hall are subjected to frisking, while inmates who receive food via quarterly packages or are able to buy food through a purchase window in the chow hall building are not frisked.

Plaintiff alleges that these incidents and the general policy that allows random frisking as inmates leave the chow hall violates a number of his civil rights. As discussed in detail below, Plaintiff fails to state any cognizable claims. Since Plaintiff may be able to cure some of the defects in his pleading, he is provided the applicable legal standards for his stated claims and an opportunity to file a first amended complaint.

**B.  Legal Standards**

**1.  Body Searches**

**a.  Fourth Amendment**

Plaintiff alleges that the searches to which he was subjected on December 20, 2016, and December 21, 2016, violated his rights under the Fourth Amendment. However, the Fourth Amendment prohibits only unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861 (1979); *Byrd v. Maricopa County Sheriff's Office*, 629 F.3d 1135, 1140 (9th Cir. 2011); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). The Supreme Court has stated that "[e]ven if a warrant is not required, a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of execution." *Maryland v. King*, --- U.S. ---, 133 S.Ct. 1958, 1970 (2013).

To determine whether an individual search or seizure is reasonable, the "totality of [the] circumstances" must be evaluated. *Missouri v. McNeely*, --- U.S. ---, 133 S.Ct. 1552, 1559 (2013). This encompasses "(1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Byrd*, 629 F.3d at 1141 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (internal quotations omitted)). Each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Nunez v. Duncan*, 591 F.3d 1217, 1227 (9th

Cir. 2010) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861 (1979) (emphasis added)).

Plaintiff describes the December 20, 2016, and December 21, 2016, frisks as having hands placed all over his body. This description is far less intrusive than a general clothed body search that has been found reasonable in a prison setting. *See Smith v. L.A. County*, No. CV 07-7028-VAP (MAN), 2010 U.S. Dist. LEXIS 61985 (C.D.Cal. Apr. 22, 2010) (allegations that a deputy at the county jail conducted a "sexually abusive" contraband search when he stripped plaintiff to his boxers, pulled plaintiff's boxers to look at his buttocks, reached underneath the boxers to "pull" and "cup" plaintiff's genitals, and inserted his hand, "karate chop style," between plaintiff's buttocks not cognizable under the Fourth Amendment), *affirmed Smith v. L.A. County*, 452 Fed. Appx. 768 (9th Cir. 2011) (unpublished). Thus, Plaintiff's allegations fail to state a cognizable claim for an unreasonable search under the Fourth Amendment.

### b. Eighth Amendment

The Eighth Amendment prohibits those who operate our prisons from using excessive physical force against inmates. *Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1178 (2010) (per curi am); *Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992). Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The Eighth Amendment protects inmates from repetitive and harassing searches, and from sexual abuse. *Schwenk v. Hartford*, 204 F.3d 1187, 1196-1197 (9th Cir. 2000).

Extreme circumstances are required to state a cognizable claim under the Eighth Amendment for an allegedly inappropriate body search to violate the Eighth Amendment: a plaintiff must demonstrate that the search amounted to the unnecessary and wanton infliction of pain. *Jordan v. Gardner*, 986 F.2d 1521, 1525-26 (9th Cir. 1993) (concluding that "momentary discomfort" is not enough). In *Jordan*, the Ninth Circuit held that a prison policy requiring male

guards to conduct frequent random clothed body searches of female inmates constituted cruel and unusual punishment when the policy was adopted despite warnings by prison psychologists that the intrusive searches would severely traumatize inmates, many of whom had pre-incarceration histories of sexual abuse by men.

In the absence of a preexisting mental condition or a particularly invasive search, the humiliation allegedly suffered due to unwanted physical contact from a correctional officer "does not rise to the level of severe psychological pain required to state an Eighth Amendment claim." *Watison*, 668 F.3d at 1112–14 (affirming dismissal of Eighth Amendment claim against correctional officer who allegedly entered inmate's cell while on the toilet, and rubbed his thigh against the inmate's thigh, while smiling and laughing). Further, merely characterizing the touching as offensive, sexual, or embarrassing is not enough. *See Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir.1998) (affirming summary judgment for defendant on Eighth Amendment claim, where plaintiff was subjected to an "embarrassing" and "unwanted" touch on his buttocks by a prison employee in an encounter that lasted no longer than a minute).

Thus, Plaintiff's allegations that Sgt. Ghilarducco used force "that wasn't necessary" when he searched Plaintiff on December 20, 2016, is not cognizable. Plaintiff has not stated any allegations regarding the manner in which his body was searched on December 21, 2016. Thus, any such claim is likewise not cognizable.

### c. Fourteenth Amendment

Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated because correctional staff *told him* on December 20, 2016, that he would be frisked the next day; thus, the second time Plaintiff was frisked, on December 21, 2016, violated CDCR policy as it was obviously not random.

#### i. Procedural

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff has not alleged any facts to support a claim that he was deprived of a protected

7

interest without procedural due process.

### ii. Substantive

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 520 U.S. 1240 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). "[P]risoners retain a limited right to bodily privacy." *Michenfelder*, 860 F.2d at 333. The threshold analysis largely mirrors that under the Fourth Amendment, *Byrd v. Maricopa County Board of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017), which as previously discussed, is not cognizable on Plaintiff's sparse factual allegations.

### iii. Equal Protection

It appears that Plaintiff may have intended to state a discrimination claim under the Fourteenth Amendment. The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439(1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on Plaintiff's membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon*

*Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008), *see also Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004); *Sea River Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. To establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976); *Serrano*, 345 F.3d at 1081-82; *Freeman v. Arpio*, 125 F.3d 732, 737 (9th Cir. 1997).

Plaintiff does not state a cognizable Equal Protection claim. He fails to state any allegations to show his membership in a protected class, show he was intentionally treated differently from others similarly situated, or demonstrate any discriminatory intent on the part of the named Defendants.

### iv. Free Speech

Plaintiff alleges that his rights to free speech under the First Amendment were violated when he was frisked because he "openly talked to people about how Plaintiff doesn't think it's alright to be treated as a circus bear by being expected to walk on a white line narrower than one of Plaintiff's feet to get daily meals" in November of 2016, and because he responded "why" on December 20, 2016, when Sgt. Ghilarducci directed Plaintiff to come to the sergeant.

The Supreme Court has long recognized that "(l)awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948); *see also Pell v. Procunier*, 417 U.S. 817, 822, (1974); *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.

The Supreme Court noted in *Pell*, at 822:

> [A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

"In a prison context, an inmate does not retain those First Amendment rights that are 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Id.*, at 822. Prisons, it is obvious, differ in numerous respects from free society. To begin with, they are involuntarily populated by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance. In seeking a "mutual accommodation between institutional needs and objectives (of prisons) and the provisions of the Constitution that are of general application," *Wolff v. McDonnell*, 418 U.S., at 556, the Supreme Court has repeatedly recognized the need for major restrictions on a prisoner's rights. *See, e.g.*, *Id.*, 418 U.S., at 561-562; *Lanza v. New York,* 370 U.S. 139, 143 (1962). These restrictions have applied as well where First Amendment values were implicated. *Jones*, 433 U.S. at 129-30 *citing Pell v. Procunier*, supra; *Procunier v. Martinez*, 416 U.S. 396 (1974); *Meachum v. Fano*, 427 U.S. 215 (1976).

Because no published Ninth Circuit case has addressed the extent of an inmate's right to comment or complain, this Court turns to other circuits for persuasive authority. The Seventh Circuit has found that a prisoner had a protected First Amendment right to assist a deceased inmate's mother in her wrongful death lawsuit against prison officials. *Bridges v. Gilbert*, 557 F.3d 541, 544, 555 (7th Cir.2009). The *Bridges* court applied *Turner* to find that "[p]risons have an interest in keeping the inmates as safe and secure as possible" and that "truthful speech that describes possible abuses can actually be quite consistent with that objective ." *Id*. at 554 (citing *Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir.1995)).

Conversely, the Seventh Circuit found no protected right where an inmate law clerk "openly challeng[ed] [the law librarian's] directives in front of other prisoner law clerks," thereby "imped[ing] her authority and her ability to implement library policy." *Watkins v. Kasper*, 599

F.3d 791, 797 (7th Cir.2010) (citation omitted); *cf. Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir.2008) (finding that "false and insubordinate remarks fell within the rules' proscriptions and, accordingly, were not protected."). These decisions comport with the Supreme Court holding that an "inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822. This Court similarly finds no basis for a cognizable claim where an inmate makes comments outside of the prison's grievance process, not in an attempt to complain to a supervisor, but instead as a challenge to their authority. Thus, Plaintiff fails and is unable to state a cognizable claim based on incidents that occurred subsequent to his negative comments on the process of lining up for daily meals and for asking Sgt. Ghilarducci "why?" when the sergeant instructed Plaintiff to "come here."

### v. Retaliation

The First Amendment protects inmates from retaliation for engaging in protected conduct. A retaliation claim has five elements. *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009).

First, the plaintiff must allege that the retaliated-against conduct is protected. *Id.* The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Second, the plaintiff must show the defendant took adverse action against the plaintiff. *Rhodes*, at 567. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. *Waitson*, 668 F.3d at 1114. Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the

11

correctional institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

In his retaliation claim, Plaintiff alleges he was subjected to the frisks on December 20, 2016, and the following day because in November of 2016, Plaintiff "openly talked to people about how Plaintiff doesn't think it's alright to be treated as a circus bear by being expected to walk on a white line narrower than one of Plaintiff's feet to get daily meals," and because he responded "why" on December 20, 2016, when Sgt. Ghilarducci directed Plaintiff to come to where the sergeant was -- immediately before Plaintiff was frisked. As discussed above, neither of these incidents amount to a violation of Plaintiff's right to free speech under the First Amendment to amount to protected conduct. Thus, Plaintiff fails to state a cognizable retaliation claim.

### vi. Supervisory Liability

Plaintiff appears to have named Warden Stu Sherman; the current Director and Deputy Directors; the current California Secretary of State; Wardens from 2012 to 2015 at HDSP; any Director or Deputy Director of the CDCR from 2012 to 2015; and any California Secretary of State from 2012 to 2015 as defendants based on their supervisory positions.

Generally, supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* -- when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under this theory, Plaintiff must allege some facts to support a claim that supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

To show this, "a plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under

12

section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)(internal quotation marks omitted)(abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1994).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," *id*. (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco,* 266 F.3d 959, 968 (9th Cir.2001). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted). To be liable in a supervisorial capacity, Plaintiff must first state cognizable claims against subordinates, which as discussed above, Plaintiff has not done. Plaintiff also fails to state any allegations to show that any of the supervisory defendants named in this action personally participated in the activities which he alleges violated his rights, knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself violated Plaintiff's civil rights.

### vii. Statute of Limitations

Plaintiff filed this action on March 29, 2017. Plaintiff, however, alleges he has been subjected to the random search policy during and after chow time since his incarceration in 2012.

The applicable statute of limitations begins to run upon accrual of the plaintiff's claim, i.e. when he knows or has reason to know of the injury that is the basis of his action, *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009), which is normally on the date of injury, *Ward v. Westinghouse Canada, Inc*., 32 F.3d 1405, 1407 (9th Cir.1994). Actions under section 1983 fall under the limitations period from the forum state's statute of limitations for personal injury torts, *see Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091 (2007), which is two years in California,

*see Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1.

The two-year statute of limitations period is tolled for two years if the plaintiff is a prisoner serving a term of less than life which gives such prisoners effectively four years to file a federal suit. *See* Cal. Civ. Proc. Code § 352.1(a); *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (federal courts borrow the state's California's equitable tolling rules if they are not inconsistent with federal law). Although the term of Plaintiff's sentence is not known, the limitations period for his claims would not differ if he were serving a term of life with the possibility of parole, as that is considered a term of less than life. *Martinez v. Gomez*, 137 F.3d 1124, 1126 (9th Cir. 1998). Further, in California "[l]imitations are tolled during period of imprisonment of persons sentenced to life imprisonment." Cal. Civ. Proc. Code § 352.1, note (West Ann. 2017) (2. Construction and application) (citing *Grasso v. McDonough Power Equip.*, 264 Cal.App.2d 597, 601, 70 Cal.Rptr. 458 (1968) (reversed dismissal on demurrer based on statute of limitations of action brought by inmate sentenced to a life term roughly nine years after precipitating incident,)); *see also Brooks v. Mercy Hosp.*, 1 Cal.App.5th 1, 6-7 (2016) (finding ". . . *Grasso* remains good law.")

Thus, without knowing Plaintiff's sentence, he had a minimum of four years from the date of the incidents at issue to file suit. Conversely, all incidents that occurred more than four years before the date Plaintiff filed suit are barred by the statute of limitations. Since Plaintiff filed this action on March 29, 2017, he is barred from pursuing claims based on incidents that occurred before March 26, 2013.

### viii. Damages

Plaintiff's allegations fail to establish the prerequisites for the compensatory, punitive, and nominal damages he seeks. Plaintiff fails to show actual injury, which is a prerequisite required for compensatory damages. *Carey v. Piphus*, 435 U.S. 247, 254, 264 (1978); *accord*, *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986). None of Plaintiff's allegations show violation of any of his civil rights, let alone malicious acts on behalf of any of the defendants to entitle Plaintiff to punitive damages. *See Smith v. Wade*, 461 U.S. 30, 55 (1983). Further, punitive damages are not available against municipalities, *see Kentucky v. Graham, 473*

*U.S. 159*, 167, n. 13, or against state officials sued in their official capacities, *see Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). Awards of punitive damages are left to the jury's discretion upon a finding that the defendant either acted with an evil motive or with reckless/callous indifference to the plaintiff's federally protected rights. *See Smith*, 461 U.S. at 54, 56; *Dang v. Cross*, 422 F.3d 800, 807-09 (9th Cir. 2005). If Plaintiff is able to state a claim for the denial of procedural due process, he may be entitled to "nominal damages without proof of actual injury." *Carey*, 435 U.S. at 266. Finally, Plaintiff does not allege physical injury and his allegations do not amount to sexual assault to entitle him to damages for mental or emotional injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).")

## **ORDER**

For the reasons set forth above, Plaintiff's Complaint is dismissed with leave to file a first amended complaint within **twenty-one (21) days**. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than **twenty-one (21) days** from the date of service of this order.

Plaintiff must demonstrate in any first amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The first amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be

[sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further reminded that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **twenty-one (21) days** from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order, or a notice of voluntary dismissal; and
4. **If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a cognizable claim**.

IT IS SO ORDERED.

Dated: __**October 18, 2017**__       /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE